IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| **M.M.H.**, a minor, by and through, **MICAH HARRIS**, individually, and as natural guardian, custodian parent, and next friend, | : : : : | |
| | : | Civil Action File No.: 2:25-cv-032 |
| Plaintiffs, | : : | |
| v. | : : | |
| | : | *Jury Trial Demanded* |
| **ZURU, LLC,** | : : | |
| Defendant. | | |

Plaintiffs, **M.M.H.** and **MICAH HEATH HARRIS** ("Plaintiffs"), by and through their undersigned counsel, **JOHNSON BECKER, PLLC**, and **CONLEY GRIGGS PARTIN, LLP**, hereby submit the following Complaint and Demand for Jury Trial against Defendant, **ZURU, LLC** ("Zuru" or "Defendant"), and allege the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1. Zuru designs, manufactures, markets, imports, distributes and sells a wide range of children's toys, including the subject "Zuru Baby Shark Sing & Swim Bath Toys," which specifically includes the Model No. 25282 (hereafter referred to as "subject toy" or "Baby Shark(s)") that is at issue in this case.

2. On or about March 8, 2023, minor Plaintiff M.M.H. was taking a bath and playing with the subject toy when she slipped and fell, landing on the subject toy. The subject toy impaled minor Plaintiff's rectum; resulting in pain injuries and permanent scarring at the puncture site.

1

3.     On or about June 22, 2023, Defendant recalled[1] more than *7.5 million* Baby Sharks, which includes the subject toy, because "a child can slip and fall or sit onto the hard plastic top fin of the shark, posing risks of impalement, lacerations and punctures."[2] The recall was issued in cooperation with the Consumer Products Safety Commission (CPSC).

4.     Defendants manufactured these Baby Sharks, including the subject toy, with a defect that made them inherently dangerous due to their propensity to cause "impalement, lacerations and punctures."

5.     Consequently, Plaintiffs bring this case as a direct and proximate result of Defendant's wrongful misconduct.

## PARTIES, JURISDICTION, SERVICE, AND VENUE

6.     Plaintiffs Micah Harris and M.M.H. are residents and citizens of the City of Screven, Wayne County, State of Georgia. M.M.H. is five years old, and resides with her mother, Micah Harris. Plaintiffs are therefore residents and citizens of the State of Georgia for purposes of diversity jurisdiction prescribed by 28 U.S.C. § 1332.

7.     Defendant Zuru, LLC is a limited liability company organized under the laws of the State of California with its principal place of business in California. Zuru, LLC's sole member is Zuru, Inc., a corporation created and organized under the laws of Hong Kong. Zuru, LLC is therefore a citizen of the California and Hong Kong for the purposes of diversity jurisdiction under 28 U.S.C. § 1332. Zuru may be served at their United States headquarters located at 2121 East Maple Avenue, El Segundo, California 90245-5011 or through their California registered agent,

---

[1]     https://www.cpsc.gov/Recalls/2023/Zuru-Recalls-7-5-Million-Baby-Shark-and-Mini-Baby-Shark-Bath-Toys-With-Hard-Plastic-Top-Fins-Due-to-Risk-of-Impalement-Laceration-and-Puncture-Injuries-to-Children . A copy of the Safety Recall Report is attached hereto as **Exhibit A**.

[2] *Id*.

CT Corporation System, 330 North Brand Boulevard, Suite 700, Glendale, California 91203. At all times pertinent to this Complaint, Defendant Zuru was and is in the business of designing, testing, manufacturing, marketing, promoting, advertising, and selling children's toys, including the subject toy at issue in this case. Defendant Zuru (either on its own or by and through its affiliated U.S.-based importers, distributors, dealers, and retailers) sells children's toys throughout the United States and specifically in Georgia, transacts business in the State of Georgia, and revenue from children toy sales in the State of Georgia. At all relevant times, Zuru knew that its products were (and are) being sold in the State of Georgia, for use by consumers in Georgia, and its products caused to Plaintiff in the State of Georgia. Upon information and belief, but without the benefit of factual discovery, Zuru promoted via television, internet, through distributors and retailers and otherwise at all relevant times to this case, the subject toy (and other similar models of children's toys) to be sold in all fifty states, including Georgia. This Court has personal jurisdiction over Zuru because of its continuous and systematic business contacts with the State of Georgia and because its product sold in Georgia caused harm in Georgia.

8.     *Personal Jurisdiction over Defendant Zuru: Georgia's Long-Arm Statute.*  Defendant Zuru transacts business within the state of Georgia. Upon current information and belief, Defendant Zuru has agreements with distributors and retailers within Georgia for distribution, marketing, promotion, and sale of children's toys (along with the subject toy) in Georgia and is thereby transacting business within this state. Upon information and belief, Zuru derives substantial revenue from goods sold and used in Georgia, regularly does or solicits business in Georgia, and caused an injury within this state by an act or omission outside of this state. Under

Georgia's long-arm statute (O.C.G.A. § 9-10-91), this Court has personal jurisdiction over Defendant Zuru.

9. *Personal Jurisdiction over Defendant Zuru*: *Due Process.* Defendant Zuru purposefully directed its activities at residents of Georgia by designing, manufacturing, marketing, promoting, distributing, and selling children's toys (including the subject toy) within the state of Georgia. Upon information and belief, Zuru shipped, or participated in the shipping, the subject toy, whose defective design caused Plaintiff's injuries, with reasonable expectation that it could or would find its way to Georgia through the stream of commerce. Defendant Zuru's actions in designing, manufacturing, marketing, distributing, and selling children's toys (including the subject toy) and other products directly and/or by and through sales agreements should have led it to reasonably anticipate being hauled into court here. Zuru's acts manifested an intention to submit to and be protected by the laws of Georgia. In short, Zuru purposefully availed itself of the privilege of conducting activities in this state through contacts with this state and those contacts led directly to this litigation. Exercising personal jurisdiction over Defendant Zuru comports with due process.

10. *Subject Matter Jurisdiction.* This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

11. *Venue.* Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to this claim occurred in this district and division, Plaintiff resides in Wayne County (which is within this District and Division), and

because Defendants regularly conduct business in this District and Division, including the promotion, sale, and distribution of the subject toy and other children's toys.

## FACTUAL BACKGROUND

12. Zuru designs, manufactures, markets, imports, distributes and sells a wide-range of children's toys, including the subject "Zuru Baby Shark Sing & Swim Bath Toys," which specifically includes the Model No. 25282 (hereafter referred to as "subject toy" or "Baby shark(s)") that is at issue in this case.

13. On or about March 8, 2023, minor Plaintiff M.M.H. was taking a bath and playing with the subject toy when she slipped and fell, landing on the subject toy. The subject toy impaled minor Plaintiff's rectum; resulting in pain injuries and permanent scarring at the puncture site.

14. On or about June 22, 2023, Defendant recalled[3] more than *7.5 million* Baby Sharks, which includes the subject toy, because "a child can slip and fall or sit onto the hard plastic top fin of the shark, posing risks of impalement, lacerations and punctures."[4]  The recall was issued in cooperation with the Consumer Products Safety Commission (CPSC).

15. Plaintiff used her toy for its intended purpose and did so in a manner that was reasonable and foreseeable by Defendant.

16. Defendant's toys possess defects that make them unreasonably dangerous for their intended use by consumers because of their propensity to cause "impalement, lacerations and punctures."

17. Defendant knew or should have known that its toys possessed defects that posed a safety risk to minor Plaintiff and the public.  Nevertheless, Defendant ignored and/or concealed its

---

[3] *Id*.

[4] *Id*.

knowledge of the toys' defects from the general public and continued generating a substantial profit from the sale of their toys.

18. As a direct and proximate result of Defendant's concealment of such defects, its failure to warn consumers of such defects, its failure to timely remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous toy, which resulted in significant and painful bodily injuries.

19. Consequently, the Plaintiffs in this case seek damages resulting from the use of Defendant's toy as described above, which has caused minor Plaintiff M.M.H. to suffer from bodily injuries, medical expenses, physical pain and other damages.

## CAUSES OF ACTION

### COUNT I
### STRICT LIABILITY

20. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

21. At the time of M.M.H.'s injuries, Defendant's Baby Sharks, including the subject toy, were defective unreasonably dangerous for use by foreseeable consumers, including minor Plaintiff.

22. The subject Baby Shark was in the same or substantially similar condition as when it left the possession of the Defendant.

23. Plaintiffs did not misuse or materially alter the subject toy.

24. The subject Baby Sharks did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

25. Further, a reasonable person would conclude that the possibility and seriousness of harm outweighs the burden and cost of making the subject Baby Sharks safe. Specifically:

    a. The subject Baby Shark designed, manufactured, sold, and supplied by Defendant was defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

    b. The seriousness of the potential laceration or impalement injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

    c. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the subject toy, including Baby Sharks similar or identical to the subject toy, despite having extensive knowledge that the aforementioned injuries could and did occur;

    d. Defendant failed to warn and place adequate warnings and instructions on the subject toy, including Baby Sharks similar or identical to the subject toy;

    e. Defendant failed to adequately test the subject toy, including Baby Sharks similar or identical to the subject toy; and

    f. Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages.

26. Defendant's actions and omissions were the direct and proximate cause of Plaintiffs' injuries and damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II
## NEGLIGENCE

27. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

28. Defendant owed a duty of reasonable care to design, manufacture, market, and sell non-defective Baby Sharks that are reasonably safe for their intended uses by consumers, such as M.M.H.

7

29. Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its Baby Sharks in that Defendant knew or should have known that said Baby Sharks, including the subject toy, created a high risk of unreasonable harm to the Plaintiff and consumers alike due to their propensity to cause laceration or impalement injuries.

30. The Defendant in this case was negligent in the design, manufacture, advertising, warning, marketing, and sale of its Baby Sharks, including the subject toy in that, *inter alia*, it:

    a. Failed to use due care in designing and manufacturing the subject toy to avoid the aforementioned risks to individuals;

    b. Placed an unsafe product into the stream of commerce; and

    c. Were otherwise careless or negligent.

31. Despite the fact that Defendant knew or should have known that its Baby Sharks had the propensity to cause laceration or impalement injuries during their ordinary, foreseeable and proper use, Defendant continued to market its Baby Sharks to the general public.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### COUNT III
### BREACH OF IMPLIED WARRANTY OF FITNESS
### FOR A PARTICULAR PURPOSE

32. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

33. Defendant manufactured, supplied, and sold its Baby Sharks with an implied warranty that they were fit for the particular purpose of being used as a children's toy.

34. Members of the consuming public, including consumers such as Plaintiffs, were the intended third-party beneficiaries of the warranty.

35. Defendant's Baby Sharks were not fit for the particular purpose as a safe children's toy, due to the unreasonable risks of bodily injury associated with their use.

36. Plaintiff's in this case reasonably relied on Defendant's representations that its Baby Sharks were a safe and suitable children's toy.

37. Defendant's breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiffs' injuries and damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

38. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

39. At the time Defendant marketed, distributed and sold its Baby Sharks to the Plaintiffs in this case, Defendant warranted that its Baby Sharks were merchantable and fit for the ordinary purposes for which they were intended.

40. Members of the consuming public, including consumers such as Plaintiffs, were intended third-party beneficiaries of the warranty.

41. Defendant's Baby Sharks were not merchantable and fit for their ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

42. Plaintiffs in this case purchased and used the subject Baby Shark with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use as a child's toy.

43. Defendant's breach of implied warranty of merchantability was the direct and proximate cause of Plaintiffs' injury and damages.

   **WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendant for damages, to which they are entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

   a. judgment for Plaintiffs and against Defendant;

   b. damages to compensate Plaintiffs for their injuries, economic losses and pain and suffering sustained as a result of the use of the Defendant's Baby Sharks;

   c. pre and post judgment interest at the lawful rate;

   d. punitive damages on all applicable Counts as permitted by the law;

   e. a trial by jury on all issues of the case;

   f. an award of attorneys' fees; and

   g. for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **CONLEY GRIGGS PARTIN, LLP** |
| **Date:** March 3, 2025 | BY: */s/ Cale Conley* <br> CALE CONLEY <br> Georgia Bar No. 181080 <br> 4200 Northside Pkwy NW Bldg One <br> Suite 300 <br> Atlanta, GA 30327 <br> (404) 467-1155 <br> cale@conleygriggs.com |
|  | *In association with:* |
|  | **JOHNSON BECKER, PLLC** |
|  | Adam J. Kress, Esq. <br> (MN ID #0397289) <br> Pro Hac Vice to be filed <br> 444 Cedar Street, Suite 1800 <br> St. Paul, MN 55101 <br> (612) 436-1800 <br> akress@johnsonbecker.com |
|  | ***Attorneys for Plaintiff*** |